UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| FIRSTGROUP AMERICA, INC. | : | |
| 600 Vine Street | : | Case No. 1:21-cv-747 |
| Suite 1400 | : | |
| Cincinnati, OH 45202, | : | (Judge _____) |
| | : | |
| Plaintiff, | : | |
| | : | **COMPLAINT FOR DAMAGES** |
| vs. | : | |
| | : | **WITH JURY DEMAND** |
| ARTHUR J. GALLAGHER RISK | : | **ENDORSED HEREON** |
| MANAGEMENT SERVICES, INC. f/k/a | : | |
| ARTHUR J. GALLAGHER & CO. OF NEW | : | |
| YORK, INC. | : | |
| | : | |
| c/o Statutory Agent | : | |
| Corporation Service Company | : | |
| 50 West Broad Street, Suite 1330 | : | |
| Columbus, OH 43215, | : | |
| | : | |
| Defendant. | : | |

For its Complaint, Plaintiff FirstGroup America, Inc. ("FirstGroup") states as follows:

1.      FirstGroup brings this action to enforce Defendant Arthur J. Gallagher Risk

Management Services, Inc.'s (formerly known as Arthur J. Gallagher & Co. of New York, Inc.)

("Gallagher") contractual obligation to indemnify FirstGroup pursuant to the parties'

Compensation Agreement.

**PARTIES AND JURISDICTION**

2.      FirstGroup is a corporation organized under the laws of Delaware with its

principal place of business in Cincinnati, Ohio.

3.      Upon information and belief, Arthur J. Gallagher & Co. of New York, Inc. was a

corporation organized under the laws of New York with its principal place of business in New

York.  Upon information and belief, Arthur J. Gallagher & Co. of New York, Inc. was merged into Arthur J. Gallagher Risk Management Services, Inc. in 2010.

4.     Arthur J. Gallagher Risk Management Services, Inc. is a corporation organized under the laws of Illinois with its principal place of business also in Illinois, and is therefore considered a citizen of Illinois.

5.      Jurisdiction is proper in this Court pursuant to 28 U.S.C. §1332 because the parties are citizens of different states, and the amount in controversy exceeds $75,000 as further set forth below.

6.     Venue is proper in this Court pursuant to 28 U.S.C. §1391 because a substantial part of the events and/or omissions giving rise to the claims asserted herein occurred in this district.

## BACKGROUND ALLEGATIONS

7.     Given the nature of its business operations, FirstGroup wished to obtain and/or renew various types of insurance for itself and several of its affiliated and subsidiary entities including, among other entities, Greyhound Lines, Inc. ("Greyhound") and Americanos USA, LLC ("Americanos").

8.     Gallagher had assisted FirstGroup obtain similar insurance coverage in prior years; therefore, FirstGroup requested a proposal from Gallagher to provide insurance brokerage services for FirstGroup and its affiliated and subsidiary entities. FirstGroup and Gallagher then entered into a formal, written agreement entitled "Compensation Agreement (Insurance) – FirstGroup America Inc. & Arthur J. Gallagher & Co. of New York, Inc." ("Compensation Agreement").  A true and accurate copy of the Compensation Agreement is attached hereto as Exhibit 1 and incorporated into this Complaint.

9.      The Compensation Agreement became effective as of April 1, 2007, was

renewed, and remained in effect for all times relevant to the allegations in this Complaint.

10.      Through the Compensation Agreement, Gallagher agreed to "provide insurance

brokerage Services to Client and will use its best efforts to secure the following insurance

coverages on Client's behalf:  Workers Compensation, General Liability, Garage Liability,

Automobile Liability, Umbrella Liability and Property."

11.      In addition, the Compensation Agreement obligated Gallagher to "provide the

Services set out on Exhibit A" that was attached to the Compensation Agreement.

12.      The Services described in that Exhibit A included:

a.      Gallagher "act[ing] as Broker for the U.S. primary casualty insurance

program which includes Workers Compensation... as requested by

FirstGroup America."

b.      Gallagher performing risk management services for FirstGroup America

which included:

i.      "Marketing and selection of carriers for the primary casualty

insurance program, which includes the Workers Compensation ...

Policies."

ii.      "Interpreting coverage and offering professional advice about the

insurance program requested."

iii.      "Reviewing of FirstGroup America's contracts solely to determine

if additional risk exposures are present."

iv.      "Generally assist FirstGroup America in the administration of the

program."

13.     For its Services under the Compensation Agreement, Gallagher charged

FirstGroup a commission and fees.

14.     Through the Compensation Agreement, Gallagher acknowledged that it would be

placing insurance "on [FirstGroup's] behalf."

15.     Finally, Gallagher obligated itself to indemnify FirstGroup for Gallagher's

negligent acts or omissions. In particular:

> Gallagher agrees to indemnify and hold Client harmless from any loss,
> cost, damage, or expense (including reasonable attorney's fees) arising
> from the negligent acts or omissions of Gallagher.

16.     Pursuant to its explicit terms, the Compensation Agreement remained "in effect

until terminated by either party upon thirty (30) days prior written notice." Neither party

terminated the Compensation Agreement prior to or during the time period at issue in this action.

Therefore, the Compensation Agreement and Gallagher's duties, including its indemnification

obligation, continued in effect for all time periods relevant to the circumstances raised in this

Complaint, including for what should have been insurance policies providing coverage in 2010.

### FIRSTGROUP REQUESTS SERVICES FROM GALLAGHER UNDER THE COMPENSATION AGREEMENT

17.     As of Fall 2009, Greyhound was an affiliated entity of FirstGroup. Greyhound

and FirstGroup had separate insurance policies with different insurance companies.

18.      First Group asked Gallagher to put together a proposal to consolidate the

insurance programs of FirstGroup and Greyhound. The then-existing insurance policy listing

Greyhound as the primary insured also included coverage for workers compensation insurance

coverage for Americanos. Americanos was an affiliated entity of Greyhound.

19.     To assist Gallagher in obtaining and presenting that consolidated insurance proposal, FirstGroup provided Gallagher with employee payroll information for Greyhound and Americanos.

20.     Gallagher used the Greyhound and Americanos employee payroll information to obtain quotes for FirstGroup that would cover a variety of affiliated entities including specifically Greyhound and Americanos.

21.     Gallagher knew that it was FirstGroup's intent to continue the workers' compensation insurance coverage that had previously been obtained and provided for Greyhound and Americanos.

22.     Gallagher has admitted that the parties' intent, as directed by FirstGroup, was for Gallagher to obtain workers' compensation insurance to cover Americanos starting December 31, 2009.

23.     The insurance company that provided the quote to Gallagher for FirstGroup's requested insurance coverage has also admitted that its quote to place the insurance coverage was calculated based upon including coverage for FirstGroup, Greyhound, Americanos, and other affiliated and related companies.

24.     Accordingly, when FirstGroup accepted the proposal that Gallagher presented from the insurance company, Gallagher represented, and FirstGroup believed in good faith reliance upon Gallagher, that Gallagher was procuring insurance for all of FirstGroup's United States companies on a consolidated basis, specifically including workers' compensation insurance for Greyhound and Americanos. FirstGroup therefore authorized Gallagher to purchase those insurance policies on behalf of FirstGroup. FirstGroup believed, in good faith

reliance on Gallagher, that those insurance policies and coverages would be in force and effective as of December 31, 2009 and throughout 2010.

25.     Upon information and belief, on or about January 28, 2010, the New Hampshire Insurance Company ("New Hampshire Insurance") delivered to Gallagher both an original and a broker copy of a workers' compensation insurance policy.

26.     Neither at that time nor at any other time prior to March 2010 did Gallagher advise FirstGroup that the workers' compensation policies that Gallagher acquired for FirstGroup and certain of its affiliated entities failed to include workers' compensation coverage for Americanos.

27.     Unfortunately, in March 2010, Efrain Dominguez (an employee of Americanos) was involved in a serious bus accident and he died as a result of injuries he suffered in that accident.

28.     Representatives of Mr. Dominguez asserted personal injury claims.

29.     On May 13, 2011, New Hampshire Insurance Company issued what it purported to be a retroactive amendment to its previously issued endorsement page on the Greyhound policy. That endorsement attempted to add Americanos to the Greyhound workers' compensation policy that addressed calendar year 2010, and thereby attempted to provide workers' compensation coverage for Mr. Dominguez's personal injury claims.

30.     The Texas Department of Workers Compensation ruled that Mr. Dominguez was in the "course and scope" of his employment with Americanos and that Americanos did not have workers compensation coverage in effect for 2010.

31.     New Hampshire Insurance appealed that Department of Workers Compensation ruling to the United States District Court for the Southern District of Texas, Brownsville Division.

32.     After several years litigating that issue in the Southern District of Texas, that Court concluded that Mr. Dominguez was in the "course and scope" of his employment with Americanos and that Americanos did not have workers' compensation coverage in effect for 2010.

33.     The United States Court of Appeals for the Fifth Circuit affirmed the District Court's ruling in September 2018.

34.     With final judgments issued that FirstGroup's affiliated company, Americanos, did not have workers' compensation coverage in effect in March 2010, FirstGroup did not have the benefit of the insurance coverage, benefits, and indemnity that it explicitly requested Gallagher to obtain, that FirstGroup paid premiums for, that First Group paid substantial fees and commissions for Gallagher to obtain, and that Gallagher failed to inform FirstGroup were omitted from the relevant policy.

35.     Facing direct exposure and liability with no applicable insurance coverage, FirstGroup and its affiliated entity engaged in settlement discussions with representatives of Mr. Dominguez.

36.     FirstGroup requested that Gallagher participate in the mediation and settlement of the claims raised on behalf of Mr. Dominguez. However, Gallagher declined to participate and declined to contribute toward or indemnify FirstGroup for the amounts FirstGroup paid to settle the claim with Mr. Dominguez's representatives.

37.      FirstGroup ultimately settled the personal injury claims and made settlement payments to resolve the claims raised on behalf of Mr. Dominguez's estate totaling $4,000,000.

38.      As of the filing of this Complaint, Gallagher has not honored its contractual obligation to indemnify FirstGroup for that personal injury settlement that should have been covered by the insurance policy that FirstGroup requested Gallagher to obtain for FirstGroup's affiliated entities.

## COUNT 1-- BREACH OF CONTRACT

39.      FirstGroup incorporates the allegations contained in foregoing paragraphs as if fully rewritten herein.

40.      The parties' Compensation Agreement was and is a valid, binding, and enforceable contract.

41.      FirstGroup performed any and all material obligations and/or conditions precedent that may exist under the Compensation Agreement.

42.      Gallagher has materially breached the Compensation Agreement by, among other things,

      a.      Failing to use its best efforts to secure the consolidated insurance coverage requested by FirstGroup;

      b.      Failing to obtain workers' compensation insurance for FirstGroup's affiliated entity, Americanos;

      c.      Failing to perform risk management services for FirstGroup including the selection of a carrier for workers' compensation coverage;

      d.      Failing to interpret the coverage and offering professional advice about the insurance program and coverage that it obtained for FirstGroup and its

affiliates but which omitted a key portion of workers' compensation coverage;

e.      Failing to review the insurance policies that were issued;

f.      Failing to assist FirstGroup in the administration of the program;

g.      Failing and refusing to indemnify FirstGroup for the loss, cost, damage, and expense (including reasonable attorney's fees) that arose from Gallagher's negligent acts and omissions described above.

43.      As a direct and proximate result of Gallagher's breach, it has caused monetary damages to FirstGroup in an amount of at least $4,000,000 with a specific amount to be determined at trial.

WHEREFORE, FirstGroup demands that judgment be entered against Gallagher as follows:

A.      Compensatory damages in an amount in excess of $75,000 to be determined at trial;

B.      Attorneys' fees, pre-judgment, and post-judgment interest; and

C.      Such other and further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Jeffrey R. Teeters*
Jeffrey R. Teeters (0061801)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6050
(Facsimile) (513) 419-6450
(Email) jrteeters@woodlamping.com

Trial Attorney for Plaintiff

## JURY DEMAND

FirstGroup hereby demands a jury on all issues so triable.

/s/ Jeffrey R. Teeters
Jeffrey R. Teeters (0061801)
Wood & Lamping LLP
600 Vine Street, Suite 2500
Cincinnati, OH  45202-2491
(Telephone) (513) 852-6050
(Facsimile) (513) 419-6450
(Email) jrteeters@woodlamping.com

Trial Attorney for Plaintiff

3082129.1